UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**RESCUECOM CORPORATION,**

                            **Plaintiff,**

                **-V-**                                  **5:04-CV-93**

**JASON HYAMS,**

                            **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Law Office of Edmund J. Gegan, PLLC
Edmund J. Gegan, Esq., of Counsel
2560 Burnet Avenue
Syracuse, New York 13206
Attorney for Plaintiff

Hiscock & Barclay, LLP
Robert A. Barrer, Esq., of Counsel
One Park Place
300 South State Street
P.O. Box 4878
Syracuse, New York 13221
Attorney for Defendant

**Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Defendant moves (Dkt. No. 15) to dismiss the amended complaint (Dkt. No. 13) for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, the Court dismisses the complaint for lack of personal jurisdiction.

### AMENDED COMPLAINT

Defendant is a resident of the State of Texas. Plaintiff, a New York corporation, is a computer services franchising business headquartered in Syracuse, New York. It offers franchises nationwide and has 52 franchises, five of which are in New York. One of its trademarks is its name, "Rescuecom." It provides training, advertising, accounting, dispatching and other support for its franchisees, whose role is to provide services to customers. According to the amended complaint, "[a]ll of Rescuecom's business services are provided and enabled through its patent pending, proprietary business management software called SYSTEM ONE, which allows franchisees and technicians to access the entire system, and receive dispatch and messages anytime, anywhere, in a wireless 'handheld' computer[.]"

On October 29, 2001, defendant entered into a Franchise Agreement with plaintiff. By letter dated August 22, 2002, plaintiff terminated defendant's franchise for "failing and refusing to actively operate his franchised business as required by the Franchise Agreement."

Plaintiff sued defendant in New York State Supreme Court, Onondaga County, for violations of continuing obligations of the Franchise Agreement, including the covenant which prohibited him from competing with plaintiff, using its name and trademarks, and referring to himself as a former Rescuecom franchisee. On January 6, 2003, defendant filed a bankruptcy petition in the Southern District of Texas, Houston Division, resulting in a stay of plaintiff's New York action. Defendant was discharged and the bankruptcy case was closed on May 20, 2003.

Thereafter, defendant registered an internet domain name "rescuecomfranchise.com" and created and maintained a website, "texasrino.com," to which the "rescuecomfranchise.com" domain name forwarded and was linked (hereafter, the domain name rescuecomfranchise.com and the website texasrino.com together are referred to as "the website"). The domain name

rescuecomfranchise.com expired April 17, 2004; the texasrino.com website expired on May 2, 2004 and all content has been removed therefrom (although plaintiffs state that it could be reactivated at any time). According to the amended complaint:

> The Rescuecomfranchise.com Website contains various "warnings" to prospective franchisees that clearly profess that Rescuecom Corporation is a fraudulent enterprise, engages in deceptive advertising and fails to provide promised services to its franchisees.
>
> The Rescuecomfranchise.com Website further lists the names of various former Rescuecom franchisees, carrying the implication that said former franchisees voluntarily agreed to have their names listed on the site. Upon information and belief, those names are being used without permission, and in some cases, despite requests made by such named parties to have their names removed from the Rescuecomfranchise.com Website.
>
> Defendant Hyams' Rescuecomfranchise.com Website contains a message forum where persons may partake in conversations regarding their alleged interactions with Rescuecom Corporation. The Website also allows viewers to become registered users and obtain user names and passwords by entering into a registration agreement with defendant Hyams. The Website allows registered users special rights such as the ability to send private messages or email to each other.
>
> At least two registered users of the Rescuecomfranchise.com Website are New York residents.
>
> The Rescuecomfranchise.com Website contains "hyperlinks" to third party commercial websites some of which sell products or services competitive with those products and services offered by Rescuecom Corporation. The links include the following:
>
>> 1. An advertisement for a book entitled "Franchise Fraud", which also serves as a hyperlink to the commercial website "Amazon.com", where viewers may purchase this book, or other books directly on-line;
>> 2. An advertisement for a product called Electronic Service Control ("ESC") which provides dispatch, service and accounting information to a wireless handheld computer. This product is similar to, and therefore competitive with Rescuecom Corporation's Handheld Unit, which provides franchisees with dispatch, service and accounting information to a wireless hand held computer.
>> 3. A hyperlink to a website called "comptroub.com", a commercial website for Computer Troubleshooters, a computer services franchising company which competes with Rescuecom Corporation.
>> 4. A hyperlink to a website called "ascii.com", a commercial website for an association of computer services companies which offers various business services to its members, which are similar to, and therefore competitive with, some of the

>    services offered by Rescuecom Corporation to its franchisees.
>
> Upon information and belief, defendant Jason Hyams advertised his Rescuecomfranchise.com Website by using plaintiff's trademark "Rescuecom" as a search term or key word with, or to be used by, one or more Internet search engines, such as "Google.com" so that persons typing in the search word "Rescuecom" will receive defendant's domain name "Rescuecomfranchise.com" as a result.
>
> Upon information and belief, potential Rescuecom franchisees are predominantly computer professionals and computer companies and likely perform Internet searches on the term "Rescuecom" as a means of contacting, researching and evaluating Rescuecom Corporation as a company.
>
> Defendant Hyams did not have permission from plaintiff to establish a website using or linking to a domain name containing plaintiff's trademark "Rescuecom", nor did defendant Hyams seek such permission.
>
> The Defendant Jason Hyams' Rescuecomfranchise.com Website contains multiple defamatory statements which are false and derogatory of Rescuecom as a business, and encourage viewers, who are, upon information and belief, predominantly potential Rescuecom franchisees, to not enter into franchise agreements with Rescuecom

(Paragraph numbering omitted.)

The first cause of action alleges breach of the Franchise Agreement. In particular, plaintiff alleges that defendant operated the website in violation of a provision in the Franchise Agreement that for a period of two years after termination of the agreement, he would not "[d]ivert or attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System." The amended complaint further claims that defendant's operation of the website violated his agreement that, upon termination or expiration of the Franchise Agreement, he would immediately cease operating the franchised business and would "not thereafter, directly or indirectly, represent to the public or hold [him]self out as a present or former franchisee of

Franchisor."

The second through fifth causes of action are based on the Lanham Act. 15 U.S.C. §§ 1051, *et seq.* The second cause of action claims that defendant's use of the domain name "rescuecomfranchise.com" infringes plaintiff's registered trademark "Rescuecom" in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a). The third cause of action claims that defendant's operation of the website constitutes false or misleading representations of fact concerning the nature, characteristics or qualities of plaintiff's goods, services or commercial activities, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). The fourth cause of action alleges defendant's conduct diluted the famous, distinctive Rescuecom trademark, in violation of the Lanham Act, 15 U.S.C. § 125(c)(1). And the fifth cause of action claims that defendant's registration and use of the "rescuecomfranchise.com" domain name violated the prohibition against "cybersquatting." *See* 15 U.S.C. § 1125(d)(1).

Cause of action number six is a New York State law claim for defamation. This claim is based on statements on the website such as "Rescuecom was a fraud" and "I had to file a police report to get money back" after Rescuecom allegedly made unauthorized bank debits to defendant's account. The seventh cause of action is a New York State law claim for interference with prospective contractual relations, based on exchanges on the website with prospective Rescuecom franchisees.

**THE MOTION – PERSONAL JURISDICTION**

Defendant moves to dismiss the complaint on the ground of lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Because defendant resides outside the forum state of New York, and there is no applicable federal jurisdictional provision, defendant's amenability to suit in this Court

is determined by New York State law. *See* Fed.R.Civ.P. 4(k)(1)(A); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Plaintiff here does not claim that defendant is present in New York so as to be subject to general jurisdiction. *See* N.Y.C.P.L.R. 301. Rather, plaintiff contends that defendant is subject to specific jurisdiction under New York's long-arm statute on the ground that plaintiff's claims arise from defendant's transaction of business and commission of torts in New York. *See* N.Y.C.P.L.R. 302(a).[1]

To survive a section 12(b)(2) motion to dismiss where, as here, no evidentiary hearing is held, plaintiff need only make a *prima facie* showing that defendant is subject to the Court's personal jurisdiction. *See PDK Labs*, 103 F.3d at 1108. The Court must construe the pleadings and supporting affidavits in the light most favorable to plaintiff. *See id.*

Defendant, a resident of Texas, contends that there is no basis to assert jurisdiction over him in New York State. He submits an affidavit stating that he has lived and worked in Texas

---

[1]
N.Y. C.P.L.R. 302(a) provides:
>    Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>       1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>       2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>       3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>            (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>            (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>       4. owns, uses or possesses any real property situated within the state.

continuously for the past 33 years; that he owns no real property in New York State; that he visited New York only once, in November 2001, when he attended Rescuecom training in connection with the Franchise Agreement; that he never solicited business or engaged in other activity in New York; that he has not transacted any business here; and that he has not contracted anywhere to supply goods or services here.  Defendant contends that his registration and use of the "texasrino.com" website and the "rescuecomfranchise.com" domain name had no commercial purpose.  Moreover, defendant argues, the instant lawsuit does not arise from the Franchise Agreement, and the clause in the agreement consenting to personal jurisdiction in New York is thus inapplicable.

**Transaction of Business in New York – N.Y.C.P.L.R. 302(a)(1)**

N.Y.C.P.L.R. 302(a)(1) authorizes personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state."  In New York, a non-domiciliary transacts business under CPLR § 302(a)(1) when "he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (quotations and citations omitted).  Under section 302(a), the cause of action must "aris[e] from" the specific New York business transaction; this provision requires a "substantial relationship between the transaction and the claim asserted[.]" *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1998).  Thus, a single transaction may suffice to support long-arm jurisdiction, provided that the cause of action arises from that transaction.  *See id.*

In the case at bar, plaintiff argues that there are two grounds for section 302(a)(1) transaction-of-business jurisdiction over defendant.  The first is defendant's operation of the

website; the second is his conduct in connection with the Franchise Agreement.

*The Website*

The Court first considers whether defendant's creation and maintenance of the website amounts to transaction of business in New York such as would support section 302(a)(1) jurisdiction. A number of courts have addressed the question of what type of internet activity constitutes the transaction of business in New York by an out-of-state defendant. *See, e.g., Best Van Lines, Inc. v. Walker*, 2004 WL 964009 (S.D.N.Y.); *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp.2d 449, 456 (S.D.N.Y. 2000); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565 (S.D.N.Y. 2000). As observed in *Citigroup*, "[t]he guiding principle which has emerged from the case law is that whether the exercise of personal jurisdiction is permissible is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." 97 F.Supp.2d at 565 (citations and internal quotes omitted). The *Citigroup* court explained:

> [T]he courts have identified a spectrum of cases involving a defendant's use of the internet. At one end are cases where the defendant makes information available on what is essentially a 'passive' web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction.

*Id.* (citations omitted).

With respect to the "middle ground" of interactive web sites, courts distinguish between those with significant commercial elements, which typically are found to constitute transaction of

business, and those lacking significant commercial elements, which typically are not. *Compare Hsin Ten*, 138 F. Supp.2d at 456 (finding transaction of business in New York where out-of-state website was highly interactive and enabled New York viewer to purchase products online, download order form, and chat with online representative); *Student Advantage, Inc. v. International Student Exchange Cards, Inc*., 2000 WL 1290585,*4 (S.D.N.Y.) (finding transaction of business in New York where out-of-state website permitted New York viewer to purchase products by providing payment and shipping information online); *National Football League v. Miller*, 2000 WL 335566, *2 (S.D.N.Y.) (finding transaction of business in New York where out-of-state website was regularly visited by New Yorkers and generated substantial income from advertisers that bought space on the website); *Citigroup*, 97 F. Supp.2d at 565 (finding transaction of business in New York where out-of-state website allowed New York customers to apply for loans on the internet and chat with online representative; court found interaction was "both significant and unqualifiedly commercial in nature"), *with Knight-McConnell v. Cummins*, 2005 WL 1398590, *3 (S.D.N.Y.) (finding no transaction of business in New York based on online postings of statements about New York resident on out-of-state website); *Best Van Lines v. Walker*, 2004 WL 964009, at *5 (S.D.N.Y.) (finding no transaction of business in New York based on out-of-state posting of allegation that New York plaintiff was performing interstate moving services in violation of law); *Seldon v. Direct Response Techs*., 2004 WL 691222, *5 (S.D.N.Y) (finding no transaction of business in New York based on out-of-state website with interactive message boards available to New York users; stating that interactive message boards alone do not give rise to long-arm jurisdiction).

      Plaintiff points out that defendant's website was "very interactive"; that visitors could

register and receive login names and passwords; that registered members and "guests" could post messages to each other in the message forum; that registered members could send private communications to each other; that registered members agreed to be bound by terms and conditions of membership; that at least two registered members were New York residents; and that the first page of the website contained several links to commercial sites. Thus, plaintiff urges, defendant's website falls into that group of "middle ground" websites which have sufficient commercial elements to support 302(a)(1) jurisdiction.

This Court disagrees. There is no allegation or showing that the interaction between the website and New York members or viewers had any commercial content or purpose. The website offered nothing for sale. It did not directly generate income in any other manner. Nor is there any allegation of a business or commercial benefit to defendant from New York in connection with his postings. *See, generally, Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F.Supp.2d 1154, 1164 (W.D.Wis. 2004) (finding no "purposeful availment" in Wisconsin where "plaintiff has not shown what benefit or privilege from Wisconsin has incurred to defendant through the posting of these complaints.").

The fact that defendant's website contained links to a few other websites that sold merchandise or were plaintiff's competitors does not aid plaintiff in making a *prima facie* showing that defendant purposefully availed himself of the privilege of transacting business in New York. Plaintiff points out that there has been no discovery and that therefore it is "possible" that defendant derived some commission or royalty income from one or more of the "linked" commercial sites. Even if defendant did derive a commission from sales on one or more linked sites, however, the undisputed evidence – in particular the printouts of the website pages –

establishes that the essential nature of the website was informational, not commercial.

Nor is there any allegation or showing that the website specifically targeted New York viewers. Rather, it was available nationally, and there is nothing to suggest that defendant somehow purposefully directed the website towards New York State in particular. *See Seldon*, 2004 WL 691222, at *5 (finding no jurisdiction in New York where there was no showing that the out-of-state nationally-available message board specifically targeted New York users); *see generally Carefirst v. Carefirst Pregnancy Centers*, 334 F.3d 390, 401 (4th Cir. 2003) (finding no jurisdiction in Maryland where "generally accessible, semi-interactive Internet website [did not] direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular"); *also see generally Hy Cite Corp.*, 297 F.Supp.2d at 1164 (finding no jurisdiction in Wisconsin where defendant did not target Wisconsin citizens more than citizens of any other state, where defendant's website was "akin to an advertisement in a magazine with a national circulation," and where "defendant [did] not control who views it or responds to it."). Indeed, Rescuecom is a national business, and only five of its 52 franchises are located in New York. The postings were clearly intended to reach potential franchisees in any state, not specifically in New York.

Moreover, the fact that the subject of the allegedly defamatory online postings is located in New York does not support New York jurisdiction in this case. *See Knight-McConnell*, 2005 WL 1398590 at *3. It is conceivable that under some circumstances an out-of-state defendant's postings concerning a New York subject could amount to purposeful activity in New York sufficient to support section 302(a)(1) jurisdiction – if, for example, the defendant was a competitor of the New York subject and stood to gain a competitive advantage from the postings.

-11-

Such circumstances are not present here. Although Rescuecom was the specific subject of the website, its location in New York was incidental to defendant's efforts on a nationally-available website to reach potential franchisees everywhere.

The Court notes that plaintiff has made no showing of a need for additional discovery. The amended complaint and the undisputed facts in the motion record, construed in the light most favorable to plaintiff, establish that defendant's interactive internet website was not specifically directed to New York users; that it permitted the exchange of information among users in other states and defendant; that the exchange was not commercial in nature; and that it provided no commercial benefit to defendant in New York or anywhere else. Moreover, as discussed above, the fact that the website contained a few links to retail sites and/or possible competitors of plaintiff is insufficient in these circumstances to support a finding that the website was sufficiently commercial in nature to support section 302(a)(1) jurisdiction. This would be so even if plaintiff could show that defendant derived some commission or royalty income from the linked vendors. Thus, discovery on this issue would not aid plaintiff.

Construing the pleadings and supporting affidavits in the light most favorable to the plaintiff, the Court concludes that the quantity and quality of defendant's contacts with New York do not support a finding that defendant purposefully availed himself of the privilege of conducting activities within New York, such that he invoked the benefits and protections of its laws. Plaintiff has not made a *prima facie* showing that defendant transacted business in New York so as to support jurisdiction under section 302(a)(1).

### *The Franchise Agreement*

Moreover, plaintiff's claims clearly do not "arise out of" the defendant's activities in

connection with the Franchise Agreement.[2] Thus, defendant's New York contacts in connection with the Franchise Agreement, such as his visit to New York for Rescuecom training in 2001, cannot properly form the basis for long-arm jurisdiction in the present action.

**Tortious Act in New York**

Plaintiff also claims that this Court may exercise jurisdiction over defendant in New York because he "commit[ted] a tortious act within the state." *See* N.Y.C.P.L.R. 302(a)(2). Section 302(a)(2) has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act. *See, e.g., Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997) (discussing New York case law). Evidence that plaintiff suffered injury in New York is not sufficient to establish a tortious act in New York within the meaning of section 302(a)(2). *See id.* at 29.

In *Bensusan*, the out-of-state defendant displayed on a website a trademark which allegedly infringed that of the New York plaintiff. The Second Circuit applied the requirement of physical presence to conclude that the allegedly tortious act was committed where the website was created and/or maintained, and thus rejected 302(a)(2) jurisdiction. *Id.*; *see also Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp.2d 131, 134 (E.D.N.Y. 2000) (stating that any tort arising from the use of plaintiff's mark on defendant's website was committed in the state where the website's server is located; noting that "to hold otherwise would create nationwide (indeed, worldwide) personal

---

[2] As the Court explains, *infra*, under the heading "Consent to Personal Jurisdiction," the Court rejects plaintiff's contention that the claims in the amended complaint arise from defendant's breach of certain provisions of the Franchise Agreement that expressly survived its termination. Also, the Court notes that defendant obtained a discharge in bankruptcy of plaintiff's claims (asserted in a lawsuit in New York State Supreme Court, Onondaga County) stemming from the termination of the Franchise Agreement in 2002 and defendant's alleged breach of the non-competition clause thereafter. Those claims are not the subject of the present action.

jurisdiction over anyone and everyone who establishes an Internet website" (citations and internal quote omitted)).

In contrast, jurisdiction under section 302(a)(2) may be asserted where the out-of-state defendant uses the allegedly infringing mark in connection with commercial internet activity in the forum state, rather than merely displaying it on the internet as in *Bensusan*. This is because an attempt to pass off an infringing mark in New York is deemed to be a tort occurring in New York, whereas the mere display of a mark on a website occurs where the website is created and/or maintained. *See Citigroup*, 97 F. Supp.2d at 567; *see also Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1126-27 (W.D.Pa. 1997); *see generally discussion in Friars Nat. Ass'n v. 9900 Santa Monica, Inc*., 2005 WL 1026553, *5-*7 (S.D.N.Y.).

Here, this Court has already concluded that plaintiff has not made a *prima facie* showing that defendant transacted business in New York within the meaning of section 302(a)(1). For essentially the same reasons, construing the pleadings and supporting affidavits in the light most favorable to plaintiff, the Court further finds that plaintiff has not made a *prima facie* showing that defendant attempted to pass off plaintiff's mark in New York or otherwise engaged in commercial internet activity such as would amount to commission of a tortious act in New York under section 302(a)(2). Rather, the allegations and undisputed facts demonstrate that, as in *Bensusan*, any tortious conduct in connection with the website occurred in Texas.

**Section 302(a) – Conclusion**

Plaintiff has demonstrated no other basis for the assertion of long-arm jurisdiction under N.Y.C.P.L.R. 302(a). There is no claim that defendant regularly does or solicits business, engages

in a persistent course of conduct, or derives substantial revenue from goods used or services rendered in New York, *see* N.Y.C.P.L.R. 302(a)(3)(i); that he derives substantial revenue from interstate or international commerce, *see* N.Y.C.P.L.R. 302(a)(ii); or that he owns, uses or possesses any real property in New York. *See* N.Y.C.P.L.R. 302(a)(4). Accordingly, there is no need to consider whether assertion of long-arm jurisdiction would comport with due process. *See generally International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**Consent to Personal Jurisdiction – the Franchise Agreement**

In urging that defendant consented to personal jurisdiction in New York, plaintiff relies on the following clause in the Franchise Agreement:

> FRANCHISEE ACKNOWLEDGES THAT THIS AGREEMENT IS ENTERED INTO IN ONONDAGA COUNTY, NEW YORK, AND THAT THE VENUE FOR ANY ACTION SOUGHT TO BE BROUGHT BY EITHER PARTY ... SHALL BE BROUGHT IN THE APPROPRIATE STATE OR FEDERAL COURT SITTING IN ONONDAGA COUNTY, NEW YORK, WITH JURISDICTION OVER THE MATTER.

Defendant argues that the termination of the Franchise Agreement in August 2002 rendered this clause unenforceable. Plaintiff responds, however, that its causes of action against defendant in the instant action arise from defendant's breach of certain provisions of the Franchise Agreement that expressly survived its termination.

In contending that it states a claim for breach of a provision of the Franchise Agreement that survived termination, plaintiff cites the following provision, Article XVI (E)(4):

> For a period of two (2) years after the expiration or termination of this Agreement, regardless of the cause of termination, Franchisee shall not … [d]ivert or attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System.

This is clearly a non-compete agreement. A plain reading of the contract establishes that this

-15-

provision is intended to apply in commercial settings to prohibit defendant from such competitive conduct as soliciting his former customers or diverting Rescuecom's customers to his own business or one in which he has an interest. It can not reasonably be read to reach into a non-commercial, non-competitive context to restrain defendant from speaking in a derogatory manner about his prior relationship with Rescuecom.

Plaintiff also relies on the following clause, Article XVII (A):

> Upon termination or expiration, … Franchisee shall immediately cease to operate the Franchised Business under this Agreement, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor.

Plaintiff argues that this provision imposes an ongoing post-termination obligation, and that defendant breached it when he represented on the website that he was a former Rescuecom franchisee. Again, as with the non-compete provision discussed above, this provision, when read in context, has a commercial purpose, that is, to prevent defendant from capitalizing on plaintiff's goodwill and reputation in promoting a competing business after he ceased being a Rescuecom franchisee. It can not reasonably be read to prohibit defendant from ever stating in a non-commercial setting that he had been a Rescuecom franchisee.[3]

In other words, the above provisions cannot be construed to impose a continuing post-termination gag order on defendant so as to restrain him from expressing derogatory views of Rescuecom based on his experiences there. If such expressions are defamatory, plaintiff's proper remedy is a defamation action in a court where it can obtain personal jurisdiction over defendant.

---

[3] Plaintiff also points to certain provisions of the Franchise Agreement which prohibited defendant from using the Rescuecom name or trademarks or any variation thereof as part of a domain name or content of a website. The Franchise Agreement did not provide that these provisions survived termination of the agreement, and the Court finds no basis in the contract to treat these as provisions that "by their nature survive the expiration or termination of" the contract.

*See* N.Y.C.P.L.R. 302(a)(2); *see Pontarelli v. Shapero*, 647 N.Y.S.2d 185 (1st Dept 1996) (finding no basis to exercise "long-arm" jurisdiction over out-of-state defendants under New York law where the only tort alleged to have been committed was defamation of character). Under no view of the facts can the alleged conduct constitute a breach of the Franchise Agreement such as would warrant application of the consent-to-jurisdiction clause therein.

### CONCLUSION

Plaintiff has failed to make a *prima facie* showing that the defendant is subject to the Court's personal jurisdiction. The Court declines to impose monetary sanctions on plaintiff. Accordingly, it is

ORDERED that defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is granted, except insofar as it seeks attorney's fees and costs; and it is further

ORDERED that the amended complaint is dismissed without prejudice.

IT IS SO ORDERED.

July 5, 2006
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge